**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIEL SHAYLER, individually and on behalf all
others similarly situated,

$\qquad$ Plaintiffs,

v.

MIDTOWN INVESTIGATIONS, LTD. D/B/A ALL-
TECH INVESTIGATIONS; DAVID YURMAN
ENTERPRISES LLC; and CHOPARD USA LTD.,

$\qquad$ Defendants.

Case No. 12 Civ. 4685 (KBF)

**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**THE OTTINGER FIRM, P.C.**
Ariel Y. Graff
Robert W. Ottinger
20 W. 55th Street, 6th Floor
New York, New York 10019
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
ari@ottingerlaw.com
robert@ottingerlaw.com

*COUNSEL FOR PLAINTIFFS AND THE
PROPOSED SUBCLASSES*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ....................................................................................................................... 2

      I.     The Credible Evidence Demonstrates that Putative Class Members Were "Employees" Rather Than "Independent Contractors" Under the NYLL ................... 2

     II.    The Credible Evidence Demonstrates that Putative Class Members Suffered Common Injury and Satisfy the Numerosity Standards Under Rule 23 ..................... 6

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

*Cases*                                                                                 *Page(s)*

*In re Claim of Bertsch*
159 A.D.2d 898 (3d Dep't 1990) ........................................................................ 4

*Brock v. Superior Care, Inc.*
840 F.2d 1054 (2d Cir. 1988) ............................................................................ 2

*Bynog v. Cipriani Group*
1 N.Y.3d 193 (N.Y. 2003) ............................................................................. 4, 5

*Foresta v. Centerlight Capital Mgmt., LLC*
No. 09-3588-cv, 2010 U.S. App. LEXIS 10811 ............................................... 2

*Hernandez v. Chefs Diet Delivery, LLC*
81 A.D.3d 596 (2d Dep't 2011) ........................................................................ 4

*In re Herzberg*
96 A.D.2d 1114 (3d Dep't 1983) ...................................................................... 4

*In re Stuckelman*
16 A.D.3d 882 (3d Dep't 2005) ........................................................................ 2

*Tran v. Alphonse Hotel Corp.*
281 F.3d 23 (2d Cir. 2002) ............................................................................... 8

## PRELIMINARY STATEMENT

Plaintiffs Daniel Shayler,[1] Robert Barbera,[2] Dorde Cajic,[3] Marko Blagojevic,[4] Saso Pecov,[5] Rafael Vazquez,[6] and Emmanuel Navas (collectively, "Plaintiffs"), by their attorneys, The Ottinger Firm, P.C.,[7] respectfully submit this reply memorandum of law in further support of Plaintiffs' Motion, pursuant to Fed. R. Civ. P. 23(b)(3), for certification of two sub-classes for unpaid overtime claims under the New York Labor Law ("NYLL") by security guards who worked for Defendants All-Tech and Yurman (the "Yurman Defendants") and Defendants All-Tech and Chopard (the "Chopard Defendants") respectively.  As set forth in greater detail below, Defendants' respective submissions in opposition to Rule 23 certification fail to refute the substantial grounds for certification set forth in Plaintiffs' initial brief.  Accordingly, Plaintiffs' motion should be granted in its entirety.

---

[1]     Mr. Shayler was a guard at Yurman's corporate offices from January 2007 to October 2010.  He was also a guard at Chopard's retail location from November 2011 through early January 2012.  He regularly worked 50 to 70 hours per week at each location without receiving overtime pay.

[2]     Mr. Barbera was a guard at Chopard's retail location from January 2012 until June 2012, and regularly worked from 50 to 70 hours per week at that location without receiving overtime pay.

[3]     Mr. Cajic was a guard at Yurman's corporate offices from October 2007 through August 2010, and regularly worked from 50 to 70 hours per week at that location without receiving overtime pay.

[4]     Mr. Blagojevic was a guard at Yurman's corporate offices from February 2009 through December 2010.  He was also a guard at Chopard's retail location from November 2007 to January 2009.  He regularly worked from 50 to 70 hours per week at each location without receiving overtime pay.  (*See* Graff Reply Decl. Ex. A).

[5]     Mr. Pecov was a guard at Yurman's Madison Avenue retail location from July 2010 through November 2011, and regularly worked from 50 to 70 hours per week at that location without receiving overtime pay.  (*See* Graff Reply Decl. Ex. B).

[6]     Mr. Vazquez was a guard at Yurman's retail location in Westchester, New York from February 2012 through July 2012, and regularly worked from 50 to 70 hours per week at that location without receiving overtime pay.  (*See* Graff Reply Decl. Ex. C).

[7]     Messrs. Shayler, Barbera, Cajic, and Blagojevic have each entered into (identical) retainer agreements with the Ottinger Firm to represent them as representative Plaintiffs in this action.  Messrs. Pecov, Vazquez and Navas have submitted "Opt-In" forms authorizing the Ottinger Firm to act on their behalf in this action.

<u>**ARGUMENT**</u>

**I.     The Credible Evidence Demonstrates that Putative Class Members Were "Employees" Rather Than "Independent Contractors" Under the NYLL**

All-Tech asserts that the "central question in this case" is whether it "correctly classified the putative class members as independent contractors" who were thereby placed outside the scope of covered "employees" under the NYLL.  (All-Tech Mem. 13).  In particular, All-Tech claims that, upon hire, any guard "electing to receive 1099 compensation" was required to enter into the terms of a mutually understood "Independent Contractor" relationship (*id.* 14), and that it "was All-Tech's policy . . . to enter into an Independent Contractor Agreement with these guards on an annual basis."  (Filosa Decl. ¶ 10).  *Cf. Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("an employer's self-serving label of workers as independent contractors is not controlling").

However, All-Tech's representations on this issue are refuted by the testimony of Pia Filosa, the Company's sole owner and Rule 30(b)(6) designee. Among other things, Filosa testified that – prior to the filing of this lawsuit in June 2012 – 95% of guards were classified as 1099 "independent contractors" and only 5% were classified as W-2 "employees."  (Filosa Dep. 48:19-50:14).[8]  But, since the lawsuit was filed, All-Tech's guards have all been reclassified as W-2 employees.  Ms. Filosa explained that this sudden

---

[8]     The mere fact that All-Tech paid guards as 1099 employees is not a controlling consideration for purposes of determining their status as "employees" under the Labor Law. *See, e.g., In re Stuckelman*, 16 A.D.3d 882, 883 (3d Dep't 2005) ("The fact that the [employer] considered [the worker] to be an independent contractor and claimant deducted expenses on her federal tax return as if she were self-employed does not compel a contrary result [to court's finding of employer-employee relationship]."); *see also Foresta v. Centerlight Capital Mgmt., LLC*, No. 09-3588-cv, 2010 U.S. App. LEXIS 10811, at *5 (2d Cir. May 27, 2010) (emphasizing that courts "*should not* ordinarily place extra weight on the benefits and tax treatment factors . . . and *should* instead place special weight on the extent to which the hiring party controls the 'manner and means' by which the worker completes her assigned tasks") (citation omitted) (emphasis and ellipses in original) (applying standards derived from common law of agency).

reclassification was not rooted in any substantive change in the nature of the guards' work or employment relationships with All-Tech (or with Yurman or Chopard),[9] but instead was based on her evolving – and now better-informed – understanding of the relevant criteria for classification as an independent contractor.  (Filosa Dep. 49:9-12 ("[T]he criteria to me as an independent contractor now, what I believe to be is different than what I thought it to be.")).[10]

 All-Tech's claimed adherence to a "policy" requiring the 95% of its guards who were classified as "Independent Contractors" to enter into annual written independent contractor agreements is similarly unsupported by any evidence whatsoever.  Although Ms. Filosa testified at her deposition that she provided copies of all such agreements to her attorneys (Filosa Dep. 108:17-109:6), Defendants have produced a total of only <u>four</u> executed "Independent Contractor Agreements" – each of which is dated January 1, 2012 – during the course of discovery in this case.  (Graff Reply Decl. Ex. F).  Ms. Filosa's affidavit, submitted in opposition to Rule 23 certification, fails to even attempt to explain why she somehow "no longer possesses many" (*i.e.*, more than <u>four</u>) of the agreements that she claims to have entered into each year with virtually every guard that was paid through All-Tech during the class period.

---

[9]      The respective Fed. R. Civ. P. 30(b)(6) designees for Yurman and Chopard also testified that the nature of the services provided to them by All-Tech guards have not changed since 2006.  (*See* Lauler Dep. 92:22-25; Hruschka Dep. 62:8-63:5).

[10]      Moreover, Ms. Filosa contemporaneously directed her "field supervisors" to ensure that the weekly hours of work by guards would not exceed 40 hours per week, which suggests that the reclassification to W-2 "employee" status was, if anything, accompanied by a recognition of the full-time nature of All-Tech's relationship with the guards it paid.  (Filosa Dep. 74:22-76:2, 81:7-20).

Moreover, even to the extent that such agreements *did* exist (a conclusion that seems contrary to the preponderance of the credible evidence before the Court), the inclusion in the purported "independent contractor agreements" of a "non-compete" provision – prohibiting guards from doing business with any of All-Tech's current, past, or prospective future clients or customers for a period of two years (post-termination) – is contrary to the controlling standards for distinguishing between "employees" and "independent contractors" under the NYLL, which recognize that a hired worker's exclusive relationship with a hiring party is characteristic of an "employee," and antithetical to that of an "independent contractor."  *See Bynog v. Cipriani Group*, 1 N.Y.3d 193, 198 (N.Y. 2003); *see also In re Claim of Bertsch*, 159 A.D.2d 898, 899 (3d Dep't 1990) (affirming that Claimant was not independent contractor despite signed independent contractor agreement because "that same agreement also prohibited claimant from engaging in any activity which could be considered competitive with the services offered by the employer"); *In re Herzberg*, 96 A.D.2d 1114, 1115 (3d Dep't 1983) (affirming that employer-employee relationship existed where claimant-sales manager "could not sell competing products and was restricted from selling to the employer's customers for two years after the termination of his employment"); *Hernandez v. Chefs Diet Delivery, LLC*, 81 A.D.3d 596, 599 (2d Dep't 2011).

*Bynog* held that the critical inquiry in determining whether the NYLL governs the relationship between purported "independent contractors" and their employer "pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog*, 1 N.Y.3d at 198.  The Court of Appeals identified five factors as relevant to this determination, which call for a fact-specific analysis aimed at discerning "whether the worker (1) worked at his own convenience, (2) was free to engage

4

in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.* The relevance and relative weight that should be accorded to each factor is context-specific, and must be considered in light of the full spectrum of circumstances that characterize a hiring party's relationship with its workers. *See id.* (finding no employer-employee relationship where waiters: worked at their own discretion and on a temporary basis; were free to work for the hiring party's competitors without restriction; and were under the exclusive direction and control of the temporary service agency that hired them and provided them with IRS Form 1099's).

Here, the putative class members worked in excess of 40 hours per week at a single location pursuant to a schedule set by their employer (*Bynog* factors 1 and 5). The guards were also on All-Tech's payroll (*Bynog* factor 4) and, pursuant to the contracts proffered by All-Tech in opposition to class certification, the putative class members were also prohibited from engaging in a competing business during, and for a period of two years after, their employment (*Bynog* factor 2). In light of the standards articulated in *Bynog*, the putative class members' status as "employees" for purpose of establishing their entitlement to overtime under the NYLL is therefore clear.

In sum – contrary to Defendants' claims that the determination of each putative class members' status as an "employee" under the NYLL purportedly "requires an individualized inquiry into the circumstances surrounding each putative class members' working relationship with Defendant All-Tech" – the evidence before the Court provides resounding confirmation that the putative class members are properly classified as "employees" under the NYLL, and that Defendants' attempt to inject any ambiguity as to this fact is not supported by any credible evidence at all.

II.     **The Credible Evidence Demonstrates that Putative Class Members Suffered Common Injury and Satisfy the Numerosity Standards Under Rule 23**

As set forth in Plaintiffs' initial brief, the records that are available for purposes of identifying putative class members are limited to the weekly invoices that All-Tech issued to Yurman and Chopard for guard services at each of their respective corporate and retail locations.  However, only the invoices for Yurman's corporate offices identify individual guards by name.  (Graff Decl. Ex. 12).  The invoices for Yurman's retail locations, and for Chopard's corporate and retail locations alike, reflect work in excess of 40 hours per week at each location, but fail to identify the guards who performed the work in question.  (*Id.*).  To generate the class list in this case, Defendants therefore relied upon the names identified in the invoices for Yurman's corporate location, their memory of guards who previously worked at other Yurman and Chopard locations, and their knowledge of the guards who currently work at those locations.  (*See* ECF No. 44).

In opposition to Plaintiffs' motion for certification, however, All-Tech maintains that "a number of the security guards identified in the FLSA Class List previously provided to Plaintiffs have not suffered any injury (*i.e.*, were not required to work any overtime) and should not be a part of the proposed sub-classes."  (All-Tech Mem. 20-21).[11]  And Defendants Yurman and Chopard elaborate on this point, claiming that "every All-Tech

---

[11]     In support of this statement All-Tech also represents to the Court that "putative class members who provide security guard services at the Yurman retail location in Westchester work on a rotating basis, meaning that no one guard works more than a few days in a workweek" and therefore "cannot be said to have worked more than forty hours in a workweek at a Yurman location."  (All-Tech Mem. 17).  This representation, however, is indisputably false – as set forth in the affidavit and accompanying records submitted by Plaintiff Vazquez, a retired NYPD detective, Plaintiff Vazquez worked in excess of 40 hours per week as a security guard at Yurman's Westchester location (together with the second guard who worked through All-Tech at that location).  (*See* Graff Reply Decl. Ex. C).  Although Defendants failed to disclose Mr. Vazquez as a putative class member, he learned of this lawsuit and contacted Plaintiffs' counsel to participate.  (*See id.*).

guard who moonlighted for even one special event at Yurman over the 3.3 year period would be included in the list of 37" potential class members identified in Defendants' FLSA Class List.  (Yurman Mem. 15).  Thus, Defendants urge the Court to reject "the inanity of Plaintiffs' proposal that the Yurman sub-class consists of 74 individuals" (*id.*), and to instead conclude that "[b]ased on the record evidence, the number supplied by Plaintiff for his proposed Yurman subclass is highly inflated and akin to pure speculation."  (Yurman Mem. 16).  Defendants further submit that, "by the same reasoning as discussed above, one is led to the inevitable conclusion that . . . the number of potential class members for Chopard is well below 21."  (Yurman Mem. 16-17).  Under these circumstances, Defendants assert that an "individualized inquiry" would be required to determine whether each putative class member actually worked more than forty hours in a workweek at a Yurman or Chopard location without being paid overtime premiums for such hours.[12]

Nevertheless, Defendants' arguments on this issue utterly fail for at least two independent reasons.  First: Defendants have flatly misrepresented the number of putative class members who are known to have worked in excess of 40 hours per week.  Specifically, Plaintiffs' review of the invoices for Yurman's corporate location – which Defendants produced in discovery and purportedly reviewed in support of their characterization of the number of putative class members who actually worked overtime and of Plaintiffs'

---

[12]   All-Tech also asserts that Plaintiffs' estimates regarding the numbers of guards that worked at Yurman and Chopard locations are "largely overstated" due to the fact that All-Tech purportedly retains outside consultants to obtain security guards for placement with its clients (All-Tech Mem. 20), and that guards obtained from such "outside consultants or contractors are primarily paid directly by the outside consultants and/or contractors."  (All-Tech Mem. 4).  However, contrary to this assertion by Ms. Filosa (which is not supported by any documents or prior testimony in this case, nor by any specific details or information apart from the conclusory paragraph of her affidavit), Yurman and Chopard's Rule 30(b)(6) designees testified that no companies other than All-Tech have provided security personnel for their respective locations since 2006.  (*See* Hruschka Dep. 25:24-26:7, 13:11-15; Lauler Dep. 56:8-15).

purportedly "inane" and "highly speculative" estimates – reveals that at least _44 different_ _guards worked in excess of 40 hours per week_ at the Yurman corporate location alone during the class period.  (_See_ Graff Reply Decl. Ex. D [Summary Chart], and Ex. E [Invoices]). Defendants' assertion that substantially _fewer_ than 37 putative class members worked overtime at _all_ Yurman locations combined is therefore contrary to the credible evidence before the Court and should be rejected.

Second, and no less significant, is that Defendants' attempt to defeat certification based on their own failure to keep statutorily required records of employees' hours of work is utterly irreconcilable with the broad, remedial purposes of the NYLL, and can scarcely be invoked as a shield to avoid liability on a class-wide basis in this case.  Rather, to the extent that Defendants' records are incomplete or ambiguous (which they concededly are), all reasonable inferences are to be drawn in favor of the Plaintiffs and against the Defendants – precisely the opposite of the doubly unfair and illogical alternative that Defendants urge the Court to impose here, which would perversely allow Defendants to rely upon their violations of statutory record keeping obligations to shield them from liability for their failure to pay earned overtime wages in the first instance.  _See generally_ _Tran v. Alphonse Hotel Corp.,_ 281 F.3d 23, 31 (2d Cir. 2002) ("When accurate records or precise evidence of the hours worked do not exist, an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.").[13]

---

[13]     Given the lack of records that identify the specific All-Tech employees who performed overtime work as invoiced for the Yurman retail locations and Chopard corporate and retail locations, Plaintiffs propose that, if class certification is granted, the proposed opt-out notice be

Finally, Defendants Yurman and Chopard's attempt to justify the need for four sub-classes – comprised of All-Tech guards who worked at: (i) Yurman corporate, (ii) Yurman retail, (iii) Chopard corporate, and (iv) Chopard retail (*see* Yurman Mem. 10-11) – rather than the two sub-classes proposed by Plaintiffs – fails to identify any meaningful distinctions between the nature of the security guards' work at the Yurman Defendants and Chopard Defendants' respective corporate and retail locations that might justify such bifurcation, and should therefore be rejected.

---

transmitted to <u>all</u> guards who were paid through All-Tech's payroll processor in weekly amounts that could plausibly correlate to the overtime hours reflected on the invoices.  If Plaintiffs then prevail on the question of Defendants' liability at trial, such guards can be afforded the opportunity to recover damages upon submission of evidence (or testimony) confirming that they performed unpaid overtime work for the Chopard and/or Yurman Defendants.

## **CONCLUSION**

For the foregoing reasons and those set forth in their initial brief, Plaintiffs respectfully requests that the Court grant their motion in its entirety and: (i) certify the proposed Sub-Classes pursuant to Fed. R. Civ. P. 23(b)(3); (ii) appoint The Ottinger Firm, P.C. as Class Counsel; (iii) approve the Proposed Notice of Class Action Lawsuit; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: February 21, 2013
   New York, New York     Respectfully submitted,

             **THE OTTINGER FIRM, P.C.**

             By: _____
               Ariel Y. Graff
               Robert W. Ottinger

             20 West 55th Street, 6th Floor
             New York, New York 10019
             Telephone:  (212) 571-2000
             Facsimile:  (212) 571-0505
             ari@ottingerlaw.com
             robert@ottingerlaw.com

             *COUNSEL FOR PLAINTIFFS AND*
             *THE PROPOSED CLASSES*