UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                        :

DANIEL SHAYLER, individually and on behalf of  :
all others similarly situated,
                        :

                  Plaintiff,  :

          -v-                    :

MIDTOWN INVESTIGATIONS, LTD. D/B/A ALL-  :
TECH INVESTIGATIONS; DAVID YURMAN
ENTERPRISES LLC; and CHOPARD USA LTD.,  :

                Defendants.  :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 2 7 2013

12 Civ. 4685 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiffs are a group of security guards who obtained assignments through
Midtown Investigations, Ltd. d/b/a All-Tech Investigations ("All-Tech") at David
Yurman Enterprises LLC ("Yurman") and Chopard USA Ltd. ("Chopard").

In June 2012, plaintiff Daniel Shayler commenced an action (ECF No. 1
("Compl.")) for unpaid overtime wages pursuant to the Fair Labor Standards Act
("FLSA") and the New York Labor Law ("NYLL").  See 29 U.S.C. §§ 201 et seq.; 12
NYLL Article 19, §§ 650 et seq.  On October 5, 2012 (ECF No. 33), the parties
stipulated to a conditional opt-in class for the FLSA claims.  Opt-in notice was duly
provided to employees past and present, identified by All-Tech.  Between October
15, 2012 and January 31, 2013, six additional plaintiffs, Dorde Cajic, Robert
Barbera, Saso Pecov, Rafael Vasquez, Marko Blagojevik and Emmanuel Navas,
joined the suit.

1

Now before the Court is plaintiffs' motion to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to their NYLL claims. Specifically, plaintiffs seek certification of two sub-classes: (1) all persons who work or have worked as a security guard through All-Tech at a Yurman location in New York at any time from June 14, 2006, to the present; and (2) all persons who work or have worked as a security guard through All-Tech at a Chopard location in New York at any time from June 14, 2006, to the present.

Defendants Yurman, Chopard and All-Tech oppose certification on the basis that plaintiffs cannot meet the requirements of Rule 23. For the reasons set forth below, this Court agrees.

## I. FACTS RELEVANT TO CLASS CERTIFICATION

The six opt-in plaintiffs worked at Yurman or Chopard as security guards at some point during the period from 2007 to the present.[1] None of the now seven plaintiffs worked at Yurman or Chopard in 2006, and none work there today. Indeed only one of the new plaintiffs, Robert Barbera, even worked at Chopard – and then only in 2012.

According to All-Tech, and uncontested by plaintiffs, at all times, plaintiffs received their assignments to work at Yurman or Chopard through All-Tech. All-Tech has put forward uncontroverted evidence that during the period from 2006-2009, it relied heavily on outside consultants and/or contractors to provide security guards for placement with its clients. All-Tech has continued to use the services of

---

[1] Plaintiff Shayler is the only current plaintiff who brought both FLSA and NYLL claims. The six additional opt-in plaintiffs have joined the FLSA action. This Court would, however, exercise supplemental jurisdiction over any NYLL claims they may choose to assert. At this time, they have not asserted such claims.

outside consultants and/or contractors to obtain guards for placement with clients – although it is increasingly moving towards placing its own employed security guards with clients.

Up until 2010, All-Tech entered into different types of employment arrangements with security guards that it hired directly: they were given the option of being compensated as independent contractors and receiving a Form 1099, or receiving compensation as an employee (thus, receiving a W-2). The amount and type of compensation and benefits differed according to the classification chosen – and even within a particular classification, employees at the same entry level might receive different compensation packages. Thus, at all times, security guards placed by All-Tech might have an arrangement with some firm prior to All-Tech (one of All-Tech's outside consultants and/or independent contractors), an arrangement with All-Tech to be considered an independent contractor or an employee, a placement by All-Tech at Yurman , Chopard or both at different times – as well as at different clients.

The security guards placed by All-Tech worked at a number of different locations – often moving between locations. Thus, a security guard might work at one Yurman location for a long or short period of time and then move to another location. There were also "floaters" who filled in for absent security guards, "relief guards" who provided short term assistance (e.g., during a meal break), or "part-time" guards, who might work only a few shifts a week. There were also "supervisor" guards whose responsibilities included supervising the other guards.

According to defendants, the security guards hours, schedules and locations of work therefore varied.

A. Yurman

In 2007, All-Tech entered into an agreement with Yurman to provide security guards at various locations. The number of security guards placed at Yurman's locations has varied in total from between ten and fourteen at any one time. These guards ran the gamut of those described more generally above: full-time, part-time, relief guards, floaters and supervisors. Some of the guards had chosen to be compensated as independent contractors. All were compensated through All-Tech. Some of these guards were obtained by All-Tech through arrangements that it had with outside consultants and/or contractors.

In support of this motion, plaintiffs have submitted a chart which aggregates all of the names of security guards placed at the Yurman corporate location (that is, not specifically a retail location). The total number of security guards listed on the chart is fifty-seven. (See Reply Declaration of Ariel Y. Graff in Support of Plaintiffs' Motion for Class Certification, Ex. D.) Of those listed, to the extent addresses were known, they would have received opt-in notification (those who worked during the FLSA time period); of those listed, only eleven are listed as still working at Yurman. In addition, of those listed, twelve are listed as not having worked any overtime, and nineteen others (for a total of thirty-one of the fifty-seven) are listed as having no last name, no last known address, no start or end date, or length of tenure. The list simply sets forth a name apparently associated with someone who worked

overtime at Yurman. In short, of the fifty-seven names listed, only forty-five are even potential candidates for inclusion in the class (e.g., minus the twelve which have no overtime periods) – but of those, nineteen more may be duplicative with previously identified (and elsewhere listed) individuals, and in any event, have no identifying information to which notice could be sent.[2] The chart therefore suggests that only thirty-one of the individuals listed are solid candidates for inclusion in any proposed class.

### B. Chopard

In 2007, All-Tech entered into an agreement with Chopard to provide security guards at various locations. Since that time, All-Tech has provided Chopard with approximately three security guards on a daily basis. These guards have been full-time, part-time, floaters, relief guards and supervisors. Some of the guards were obtained by All-Tech through arrangements it had with outside consultants and/or contractors. Accordingly to All-Tech, the security guards who have worked at Chopard have remained largely consistent – and even if aggregated over time, amount to no more than twenty. Any who worked during the FLSA time period would have received opt-in notice.

### C. The Current Group of Plaintiffs

The original plaintiff who commenced this action, Shayler, began working with All-Tech as a security guard in 2007. He was placed at Yurman from 2007

---

[2] Without a full name or address, a variety of information cannot be tested – such as whether the potential plaintiff is an independent contractor or employee. There is certainly a fair inference that he/she could be an independent contractor, it being certainly as likely, if not more so, that someone known only by first name had a transient relationship with the firm.

until 2010. Shayler was removed from Yurman in 2010 because he was suspected of being under the influence of drugs while on the job. He was placed at Chopard for a short period of time – during that time, he appeared again to be at work while under the influence of drugs and was also disheveled.[3]

Cajic commenced work with All-Tech in 2007. He was placed at Yurman where he remained until 2010 – after which he began working for other clients. Cajic was terminated in April 2012.

Barbera commenced working for All-Tech in January 2012. He was placed at Chopard where he worked until May 2012.

Defendants were unable to conduct the depositions of Pecov and Vasquez prior to the discovery cut-off. However, this Court notes that on the chart attached to the Graff Reply Declaration, Pecov is listed as having been placed at Yurman from June 2010 until October 2011; Vasquez is listed as having been placed at Yurman from February to July 2012. (Graff Reply Decl. Ex. D.)

None of the plaintiffs (Shayler or the other six opt-ins) worked at Chopard prior to 2012.

II. LEGAL STANDARD

In 2011, the Supreme Court reiterated the long-standing principle that litigation by way of a class is the exception and not the rule. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550 (2011) (citing Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)). Prior to certifying a class, a district court must undertake a

---

[3] The Court refers to these facts because of their implications, also discussed below, as to whether Shayler is either an adequate or typical representative of any Yurman subclass.

rigorous analysis that looks at each of the required elements under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure – to test whether they are satisfied by a preponderance of the evidence. Id. at 2551. That standard requires more than mere possibility – it requires that a fact be shown to be more likely than not true. On a motion for class certification, the burden is at all times on the party proposing the class.

There are four separate prerequisites of Rule 23(a):

(1) the class must be so numerous that joinder of all members is impractical (numerosity);

(2) there must be questions of law or fact common to the class (commonality);

(3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and

(4) the representative party must fairly and adequately protect the interests of the class (adequacy).

See Novella v. Westchester County, 661 F.3d 128, 149 (2d Cir. 2011). "What matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart, 131 S.Ct. at 2551.

In addition, to meeting the requirements of 23(a), in order to continue to maintain status as a class, plaintiff must be able to demonstrate by a preponderance of the evidence that the class meets the requirements of 23(b). Here, plaintiffs seek to represent a damages class. They must therefore demonstrate that the class meets the predominance requirement set forth in Rule 23(b)(3); that is, that the questions of law or fact common to the class predominate over any

7

questions affecting only individual class members, "and the requirement of superiority – that is, that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); <u>see also</u> <u>Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 104 (2d Cir. 2007).

As the Supreme Court stated in <u>Wal-Mart</u>, Rule 23 is not a mere pleading standard. 131 S. Ct. at 2552. The party seeking certification must affirmatively demonstrate compliance with the Rule – that is, "he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc." <u>Id.</u> (emphasis in original).

This motion presents particular issues with respect to Rule 23(a)'s requirements of numerosity, typicality, and adequacy, and Rule 23(b)(3)'s requirements of predominance and superiority.

In terms of numerosity, courts weigh the following factors:

(1) judicial economy;
(2) geographic dispersion of the proposed class members;
(3) financial resources of the proposed class members;
(4) the ability of proposed class members to file individual suits;
(5) requests for relief that could effect future class members;
(6) knowledge of the names and existence of potential class members;
(7) whether potential class members have already joined in other actions.

<u>See</u> <u>The Bd. Of Trustees of the So. Cal. IBEW-NECA Defined Contribution Plan v. The Bank of New York Mellon Corp.</u>, 09 Civ. 6273, 2012 U.S. LEXIS 121711, \*22 (S.D.N.Y. Aug. 16, 2012) ("Where plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails.") (citations

8

omitted); <u>Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.</u>, 269 F.R.D. 252, 255 (S.D.N.Y. 2010) (finding judicial economy not supported when plaintiffs failed to show why joinder would better serve judicial economy); <u>Bayridge Volve American, Inc. v. Volvo Cars of North America, Inc.</u>, 01 Civ. 1890, 2004 U.S. Dist. LEXIS 16111, at *8 (S.D.N.Y. Aug. 13, 2004).

Courts have found that the smaller the class, the less likely a court will find the numerosity requirement is met. <u>See e.g.</u> <u>CL-Alexanders Laing & Cruickshank v. Goldfeld</u>, 127 F.R.D. 454, 455 (S.D.N.Y. 1985) (twenty-five insufficient); <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (twenty-one or fewer suggest no class). What is akin to a rebuttable presumption of numerosity arises when the proposed class is larger than forty. <u>Tiro v. Public Housing Investmts., LLC</u>, 11 Civ. 7679, 11 Civ. 8249, 2012 U.S. Dist. LEXIS 173311 (S.D.N.Y. Dec. 4, 2012) (presumption at forty). The Second Circuit has made it clear that each case must be separately analyzed to determine whether numerosity has been met. <u>See</u> <u>Robidoux v. Celani,</u> 987 F.2d 931, 935 (2d Cir. 1993) (a plaintiff need not show that joinder is impracticable to meet numerosity; nor must evidence of <u>exact</u> class size or identity of class members be shown).

Typicality is satisfied when each class member's claims arise from the same course of events and each must make similar legal arguments to prove liability. <u>See</u> <u>Shahriar v. Smith & Wollensky Restaurant Group, Inc.</u>, 659 F.3d 234, 252 (2d Cir. 2011); <u>Robidoux</u>, 987 F.2d at 936; <u>see also</u> <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992) (<u>cert. denied</u>, 506 U.S. 1088 (1993). Rule 23

and Wal-Mart require that this Court conduct a rigorous analysis as to whether the proposed class representative has claims typical of the claims or defenses of the class. Wal-Mart, 131 S.Ct. at 2550 (a class representative must possess the same interest and suffer the same injury as the other members of the class).[4] As the Supreme Court stated in Wal-Mart, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Id.

The adequacy factor is also subject to a rigorous analysis. Id. at 2551. The question is whether class representatives are prepared fully to litigate the action and have no known conflicts with other class members. See Shahriar, 659 F.3d at 253.

For the Rule 23(b)(3) predominance and superiority requirements, this Court must conduct a rigorous analysis that asks whether common questions predominate over individualized ones. Id.; see also Wal-Mart, 131 S.Ct. at 2251. Common questions predominate when liability can be determined on a class-wide basis, even if there are individualized damage issues. Shahriar, 659 F.3d at 253; see also In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001).

To find superiority, a court must find that litigation by way of class action is superior than proceeding in another manner – such as by individualized actions or joinder. See Lewis v. Nat'l Fin. Sys., 06 Civ. 1308, 2007 WL 2455130, at *6 (E.D.N.Y. Aug. 23, 2007). Courts are to conduct a rigorous analysis and weigh (1) the interest in the class members in maintaining separate actions; (2) the extent

---

[4] In Wal-Mart, the Court did not reach the question of typicality since it determined that other Rule 23 factors could not be satisfied.

and nature of any litigation already commenced; (3) the desirability of concentrating potential actions in one forum; and (4) the difficulties likely to be encountered in managing a class. Id.; see also In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006). The Court is reminded by the Supreme Court in Wal-Mart that class actions are the exception to the usual rule that litigation is conducted by and on behalf of individual parties. See Wal-Mart, 131 S.Ct. at 2250.

II. ANALYSIS

Plaintiffs here cannot meet the requirements of – at least – numerosity, typicality, adequacy, predominance or superiority with regards to their proposed class. Failure to meet any one of these requirements is fatal to certification; failure to meet all of them calls into doubt whether this motion should have ever been made.

A. Numerosity

Plaintiff bears the burden of showing that its proposed class – here, two sub-classes – meet the requirement for numerosity. This Court is required to undertake a rigorous analysis of whether there is sufficient and appropriate numerosity – the proposed sub-classes cannot withstand such scrutiny.

It bears noting at the outset that defendants have raised a serious question as to whether the sub-classes proposed are themselves appropriate – or, as defendants urge, whether those classes need to be broken down further into Yurman and Chopard corporate offices versus retail locations. This issue has implications for defenses such as whether certain plaintiffs even have NYLL claims

as a matter of law. As set forth below, independent contractors – who are true independent contractors and not just titled as such – do not have overtime claims under the NYLL. Accordingly, to the extent that plaintiffs working out of different locations have different conditions of employment such that in one location they might be an independent contractor but in another, they would be an employee, there is a serious liability question. However, this Court need not resolve that question because it finds that even as to the broader sub-classes numerosity is lacking (the Court does, however, raise these issues below in connection with predominance).

The parties dispute the actual number of security guards who were placed at either the Yurman corporate offices or retail locations. The only numerical data before the Court is the chart attached as Exhibit D to the Graff Reply declaration. That chart lists fifty-seven names of individuals who worked at the corporate location – only forty-five of which are listed as having worked any overtime. According to plaintiffs, this chart sets forth only the guards at the Yurman corporate office – not the retail locations.

However, this does not mean that there is a totally non-overlapping group of individuals who were placed at the retail locations. As set forth above the undisputed record evidence is that All-Tech moved security guards from location to location – and an individual who worked at the Yurman corporate office may have also worked at retail location(s). Indeed, plaintiff Shayler did just this. According to evidence proffered by All-Tech, the number of security guards at any Yurman

location is thirty-seven – not the fifty-six set forth on the chart (attached to the Graff Reply Declaration). There is no contrary evidence in the record – just math apparently computed by an attorney and extrapolations thereon by an attorney.

Plaintiffs respond that the correct number of guards at Yurman cannot be thirty-seven because since there was a "ratio of 11.2 different individual class members per year (over the course of the 3.3-year FLSA period). It is therefore reasonable to assume that there are approximately 74 individuals – or, at the very least, more than 40 individuals – who held such positions with Yurman during the approximately 6.6-year Rule 23 class period under the Labor Law." (Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Memo. in Supp.") at 9.) This statement is not followed by any factual cite (for instance, a deposition cite, a citation from an expert, or any records). It is simply math done by an attorney. As an evidentiary matter, plaintiffs' only support that there might be more than forty security guards who were placed at Yurman over the years is the chart that plaintiff counsel created (from discovery materials) and attached to the Graff Reply Declaration.

Plaintiffs' proffer with respect to numerosity for the Yurman subclass fails. First, the speculative math that counsel performed – extrapolating numerosity – is plainly insufficient to meet the rigorous analysis that Wal-Mart requires.

In terms of the chart: as explained below, those who are supervisors and actual (versus simply titled) independent contractors do not face the same legal or factual issue that other guards might; they cannot be part of the same class.

Plaintiffs – who bear the burden on this motion – have not proffered whether that number is one or fifteen, or more.

The nameless, address-less, start and end-date-less individuals listed at the end of the same chart (of who there are nineteen) also fails to provide an adequate evidentiary foundation upon which this Court can rest a finding of numerosity. There are some obvious questions about these nameless people – such as: could the "Robert" listed at number fifty-five be the same "Robert McCarthy" listed at number twenty-one? Could the "Alex" listed at number thirty-nine be "Aleksander Cubric" separately listed? Is the "John" at number forty-six the same as "John Castorino" at number seven? It is also certainly as likely, if not more likely, that individuals as to whom the only information known is a first name were in fact independent contractors – who would therefore lack a NYLL claim as a matter of law. Knowing such limited information is consistent with transient presence. This Court cannot perform its required rigorous analysis based on this limited information.[5]

Thus, the Court finds by a preponderance of the evidence that the Yurman sub-class has, at most, twenty-six potential plaintiffs (forty-five minus nineteen). There is therefore no presumption of numerosity.

In terms of Chopard, the lack of numerosity is more stark. The record evidence is that there were only thirteen security guards placed at Chopard during

---

[5] While the Second Circuit has stated that prior to certification, potential class members need not be identified precisely (see Robidoux, 987 F.2d at 935), here the implications of lack of identity are particularly serious. NYLL does not provide a basis for a liability finding as to independent contractors – without names or identifying information, defendants cannot probe that question. Without a doubt, the lack of records is not plaintiffs' fault. However, the burden to demonstrate that they meet the Rule 23 requirements is. Wal-Mart requires that this Court balance these competing considerations.

the period in question. The evidence is uncontradicted that there was very little change in the security guards at Chopard. Again, plaintiffs rely on attorney generated computations of ratios to prove what must – particularly in light of <u>Wal-Mart</u> – be an evidentiary point: "[t]his represents a ratio of 3.94 different individual class members per year (over the course of the 3.3-year FLSA class period). It is therefore reasonable to assume that there are at least 26 individuals who held such a position during the approximately 6.6-year putative Rule 23 class period." (Memo. in Supp. at 9-10.) Of course, even this lawyer created number is insufficient to create a presumption of numerosity. In any event, after <u>Wal-Mart</u> there can be no doubt that this Court cannot rely on these assumptions as a factual basis for class certification.

As to both Yurman and Chopard, this Court's analysis of the various additional factors do not weigh in favor of a finding of numerosity. As an initial matter, this Court notes that the majority of all of the individuals listed on the chart at Graff Reply Decl. Ex. D are no longer placed at Yurman or Chopard – thus, any view that they would have been deterred from current employment to opt-in to the FLSA class, <u>see e.g.</u> <u>Shahriar</u>, 659 F.3d at 244, must fall away.

Since all but a few of the plaintiffs known about have already received specific notice of the FLSA opt-in class and have not chosen to join, it is not at all clear that there is any judicial economy to be gained from litigating this matter as a Rule 23 class (which <u>Wal-Mart</u> reminds us should be the exception and not the rule). If there are a few individuals whose claims fall outside the FLSA statute of

limitations and were therefore not eligible to opt-in to that class, they can easily be joined.

In addition, the evidence in the record is that members of the potential class live in the New York area – they are not geographically dispersed; this factor does not weigh in favor of the need for class treatment.

The financial resources of class members and ability to file individual suits is assisted by the provisions allowing for payment of fees in the event of successful litigation of NYLL claims. Of course, the claims of each class member to his or her own unpaid overtime cannot be resolved on the merits by another.

The sixth factor is whether there is knowledge of names and potential existence of potential class members – here, other than what is known or about which there has been speculation, the answer is "no". Indeed, this factor weighs against numerosity to the extent that is suggests that weight should be given to the ability to identify additional class members – here, eleven of the potential class members have the barest of first name identification; such a paucity of information weighs against any belief that notice would be effective. Finally, the seventh factor asks whether class members have already joined in other actions – of course here they have, this action. This is a situation in which the same potential class members who could join the class could also opt-in and received opt-in notice (so long as they were within the FLSA statute of limitations). This Court has also already stated that joinder is another option on these facts.[6]

---

[6] While a plaintiff with only a NYLL claim would not independently have subject matter jurisdiction, this Court would exercise supplemental jurisdiction in the interest of fairness and given how advanced this litigation is.

## 2. Typicality

There is an insufficient evidentiary record upon which this Court can determine that plaintiffs are typical of other members of the proposed class. As set forth above, a class representative must possess the same interest and suffer the same injury as the other members of the class. Here, there is one plaintiff who has formally asserted a NYLL claim – Shayler. He, however, was only at Yurman, primarily at the retail locations – with a short stint at corporate – and he was fired for suspicion of drug use on the job. He has put forth insufficient evidentiary material from which this Court could determine if he in fact was an employee versus an independent contractor (which would eliminate his NYLL claim). Shayler is not alleged to have been a supervisor, a floater or a relief guard.

There is no doubt – as set forth in defendants' submissions on this motion – that they intend to contest that he was an "employee." He himself conceded as his deposition that he was referred to as an independent contractor. Other individuals are or were employees – those employed more recently by All-Tech as well as those signing up as employees from the outset (and receiving W-2 compensation). In addition, Shayler has never asserted that he was a supervisor, floater or relief guard. He therefore cannot speak to or represent their terms and conditions of employment. Whether Shayler has a liability claim at all will require different proof from others – and comparing his position as a full-time security guard may not provide an evidentiary basis as to whether others in different positions do or do not have a liability claim.

There is an even more limited evidentiary record as to the other six opt-in plaintiffs. To the extent that plaintiffs wanted to rely upon their facts for proof of meeting the requirements of Rule 23, they should have put in additional affirmative proof. There is nothing in the record from which this Court can determine whether they in fact have NYLL claims as employees – or whether separately or together they represent the interests of individuals who filled other positions (e.g. as supervisors, floaters, relief guards, etc).

On this record, there is no basis for a finding of typicality.

3. Adequacy

For similar reasons, there is no basis for a finding of adequacy. Adequacy is, like typicality, a question as to whether the proposed class representative can fairly and adequately protect the interests of the class. The questions at issue go beyond whether the claims are similar – and may look at issues such as availability for the litigation, competency to review submissions and work with counsel. There is also an aspect of adequacy relating to whether class counsel is adequate – that is not here at issue.

There is uncontroverted evidence in the record that Shayler was fired for suspicion of being under the influence of drugs while at work as a security guard. The Court has received no submission which suggests that that allegation is wrong; or if correct, that Shayler would take more seriously his obligations as class representative. This Court cannot let the claims of other parties proceed represented by an individual fired for a serious issue when nothing suggests he can

or will well represent absent class members. Similarly, there is nothing in the record as to the amount of time, ability to read and understand English or have access to a translator, or competency in any way that suggests that the opt in plaintiffs are adequate. Plaintiffs bore this burden of proof – it is not a mere pleading requirement as Wal-Mart states. Thus, plaintiffs have failed to meet the Rule 23 requirement for adequacy.

C. Rule 23(b)(3)

Even if all of the Rule 23(a) requirements were met, plaintiffs would still be unable to meet the requirement that they show that questions of law or fact common to the proposed class members predominate over any questions affecting only individual members, or that proceeding by way of class action is superior to proceeding in some other manner. Fed. R. Civ. P. 23(b)(3).

1. Predominance

Plaintiffs' argue that the predominate fact and legal issues relate to whether they received overtime due, whether there were records kept and whether there was willful conduct. These allegedly common questions of law and fact, are accompanied, however, by the serious threshold inquiry as to whether certain plaintiffs are independent contractors and therefore have no basis for an NYLL claim against defendants. See Deboissiere v. American Modification Agency, 09 Civ. 2316, 2010 U.S. Dist. LEXIS 113776, at *7 (E.D.N.Y. Oct. 22, 2010). The inquiry as to whether an individual is an independent contractor or employee is fact specific and may be employee specific: where did he or she work and what were the

conditions there? Who was the supervisor and were representations made? How was he/she compensated? For how long a period was he/she employed?

It is undisputed that at least some of the security guards agreed to work as independent contractors with All-Tech and received 1099's; but plaintiffs claim that they were in fact employees. In addition, there are differences between where the various guards worked/when and in what capacity. For instance, some were supervisors, floaters, or relief guards. There is no evidence as to which guards filled which roles, and when Plaintiffs could have sought a subclass of only those individuals who were paid by W-2's – thereby facing a preponderance of the evidence standard on this key liability question that tilted in their favor. They have not. The proposed class consists of everyone placed at Yurman and Chopard by All-Tech back to 2006. This Court cannot – consistent with the requirements of Wal-Mart – assume a key liability issue in plaintiffs' favor. Plaintiffs have not met the predominance requirement.

B. Superiority

As part of its inquiry under Rule 23, this Court must also ask whether proceeding by way of class is superior to proceeding by individual action or with joinder. See Wal-Mart, 131 S.Ct. at 2251. For the same reasons stated above, this Court finds no judicial efficiencies to be furthered by class treatment. Indeed, class treatment at this stage, and given how few additional people it would bring in (most of whom have already been notified of their opportunity to join this action as opt-in FLSA plaintiffs and have not), complicates rather than simplifies this proceeding.

Settlements in the class action context require, for instance, a different fairness analysis. An additional notice and waiting period would be required; defendants might seek to take additional discovery – indeed, given the liability questions, they would have to at least try.

Plaintiffs have proffered only boilerplate assertions as to why class treatment would be superior. (Memo. in Supp. at 15-16.) They have argued that it will conserve judicial resources – but there is no showing that it will given how few people opted in to the FLSA class (put another way, this action may not really be any larger than it is already – in terms of people who want to really be part of it). As stated, all but a few people are no longer placed at Yurman or Chopard. While it is true that, according to the chart attached to the Graff Reply Decl., there are more Chopard guards who remain placed there, that subclass is too small to sway this analysis alone.

CONCLUSION

For all of the reasons set forth above, plaintiffs' motion for class certification is DENIED. The clerk of the court is directed to terminate the motion at ECF No. 48.

Dated:    New York, New York
         February 27, 2013

         K— B. Forrest

         KATHERINE B. FORREST
         United States District Judge